On the calls people v. Borowiak 5-13-388 Thank you Your Honor, I'm going to please the court. Counsel, this is a state appeal from the boarder granting a petition to restind statutory summary suspension. The circuit court found that there was no basis for the initial traffic stop. In fact, it was 1130 at night on a Saturday in downtown Nashville, Illinois. The officer and petitioner were driving in opposite directions in Nashville in a 30 mile an hour zone. The officer saw in his side view mirror of the spot cars as the cars passed each other that the petitioner's rear license plate light was out. Executed a U-turn, caught up to the petitioner and stopped her. Petitioner showed signs of intoxication, admitted to drinking and was arrested for DUI. Petitioner moved the court to rescind the SSS. The officer testified to those facts that I've described. Are you ready to call the appointment charge? No, Your Honor. The statute is at issue 625 ILCS 5-12-201C. It states that either a tail light or separate lamps will be so constructed and placed as to illuminate with a white light or the rear registration plate when required and render it clearly legible from a distance of 50 feet to the rear and shall be so wired as to be lighted whenever the headlight lamps are lighted. The circuit court ruled that what mattered was whether the license plate was legible from 50 feet regardless of, quote, whether or not the light was on and that the plate was legible in the video. There's a video of the traffic stop that's been added to the record on appeal. I'm sorry. Go ahead. Everybody focused on the light, but that's not what the statute says. The statute says that the plate can be illuminated not only by the light but by the configuration of the tail lights, doesn't it? Well, the statute says the tail lamp or, well, either a tail lamp or a separate lamp. So, I mean, it doesn't just have to be this one light, but it says any tail lamp or tail So, I was wondering why this officer kept focusing on just one light. Right. Nobody testifies that it wasn't. And then you were just commenting that it wasn't visible. Well, it still could be visible at 50 feet if the other lamps were working. Nobody says tail lamps weren't working, did they? No. No, no one said that. But everybody focused on the light when that's really not what the statute says. I mean, do you agree with me looking at it again or not? Well, Your Honor, tail lamps are an iPad that you've blown my mind. I didn't mean to do that. And so I have not considered this question. But looking at the statute on the fly, it does say illuminate with a white light, and tail lights are red. Unless you're backing up. Yeah, unless you're backing up. I think the record shows she was going forward. But that's my first thought on that. But I was thinking that maybe that's why the judge was focused on seeability. Well, it does say either a tail lamp or a separate lamp, and then it talks about the white light. Yeah. With respect to the separate lamp. Either a tail lamp or a separate lamp shall be self-constructed in place as to illuminate with a white light. Yeah. To me, that reads that whatever light is shining on the license plate needs to be white. Well, you may be right. I'm just asking a question. Yeah, go ahead. How do you explain that it miraculously worked the next day? The tow truck driver fixed it. It was the mother, however, and daughter, I guess, that said it worked the next day. And the court determined, though, that that was irrelevant, as I recall. So, clearly, it did not make its determination based on whether or not the light was working is the way it kind of came down to it. Absolutely, Your Honor. In fact, the court's ruling was that it didn't matter whether the light was working. What mattered was whether other lights rendered the plate visible from 50 feet. Which could be the headlamps of the police car. I take it. I take it that way, too. But, of course, that's not what the statute says. It says that the car, the petitioner's car, has to be equipped with a light that illuminates a white light on the license plate. Far 50 feet. It says, and renders it clearly legible for a distance of 50 feet. Correct. And so when the circuit court ruled that there didn't have to be a light right there at the back of the petitioner's car, as long as the plate could be read within 50 feet, the court ruled that the officer couldn't make that calculation, the mathematical 50 feet legibility calculation, while traveling in the opposite direction. And the circuit court ruled that the stop was pretextual. The state's argument is that the statute provides two independent bases for a lawful stop under the statute. First, that the light, that whatever light is shining on the license plate is somehow inadequate, either because it isn't white or it doesn't illuminate within 50 feet. Or second, that there's no light at all. No light at all that illuminates the license plate with a white light. And the court committed an error as a matter of law in interpreting the statute to mean that the stop was lawful only if the officer could make that calculation, could make that 50 feet calculation, regardless of whether the light was on. So the court's erroneous interpretation of the statute led to its legal ruling that an officer does not articulate a reasonable basis or, indeed, probable cause for a traffic stop when he testifies that there was no light at all. Instead, when the officer saw that the light was off, he, at that point, had probable cause to execute a traffic stop. In this case, the court heard uncontradicted testimony that the license plate light was off when the officer passed the car going the other way, executed the U-turn, and caught up with the petitioner's car. And then after executing the stop, that it was off when he passed his hand at the level of the license plate that's shown on the video of the traffic stop. When the light is out, the statute does not require the officer to then go on and calculate whether a burned-out bulb illuminates the license plate at a distance of 50 feet. The light being out is enough. Now, I'd expect these are... Isn't the reasonable suspicion to stop too prone? Can't it be either-or? Can't it be you can't... For example, you can have a working light that is so muddy and dirty that you can't visualize the plate. Wouldn't that also be a reasonable basis to stop? I'm sure it would. And that's what the court focused on, is that the plate couldn't be seen.  I'm trying to figure out why you think it was error for the court to focus on the plate issue so much. Or maybe I'm misunderstanding what you're saying. The basis that the officer gave for the traffic stop was that the rear registration plate light was out. Right. But aren't we parsing things when you say you couldn't see it at 50 feet? If it's out, you can't see it at 50 feet. You probably can't see it at 25 feet. But the court seemed to focus on the 50 feet, right? Yes, it did. And you say that's error. I'm trying to figure out why you think that's error. Because the court said that it didn't matter whether the light was on or off as long as the plate was otherwise legible from 50 feet. And the statute says that the light has to be on and illuminate the plate from a distance of 50 feet. So it can't be on and be muddy. So if it's on and it's muddy but you can't see the plate, you'd still have the violation. Right. Yes. Right. But the error here was the court's belief that the light being off altogether did not constitute an equipment violation that would justify a stop. Again, the court said it didn't matter whether the light was on or off as long as the plate was otherwise legible at a distance of 50 feet. Do you think the court had a tough time believing the officer? Well, Your Honor, the court made a credibility finding but not as to any matter that's relevant here. The judge never made a factual finding that the light was on or off, for one thing. He specifically said that the video wasn't particularly helpful in making that determination. And, again, he said he didn't matter whether the light was on. And, again, I want to stress that that's clearly against the plain language of the statute here. The statute requires the light to be on. I thought it was just the right 50-foot element, legible at 50 feet. An alternate light could have worked like the tail light if it was white in places or had a crack in it. That may constitute a different equipment violation. But I'm sorry. Could you repeat your question? He said it was visible at 50 feet. I'm sorry, who did, Your Honor? The court said it was visible at 50 feet. Yes, he did. And that's all that was required, the court said. The court said that that's all that was required, yes. And you said? I disagree. That you require a light at 50, so you can see it at 50 feet. The statute requires a license plate, a light that's either a tail lamp or a separate lamp, i.e. a license plate light, that illuminates the license plate at 50 feet. Well, I'm just trying to figure out what your position is. Right. Your position is that's what the statute requires is both. Yes. A light that illuminates and then the light itself must illuminate for up to 50 feet. Right. So if you violate the first, then it doesn't matter that you don't have, it's not like the officer has to prove he couldn't see it for 50 feet because if there's no light, there's a technical violation of the statute. Thank you, Your Honor. That's exactly right. Thank you. That's the way I read it, too. Thank you. Okay. Yes. So where there's no light at all, the officer does not then have to make this calculation about whether the nonexistent light renders the plate legible at 50 feet because the nonexistence of that light is itself a violation of the statute. Do you know how fast the officer was going? I beg your pardon? Do you know how fast the officer was going? There was no particular testimony, I don't believe, as to how fast either of them were going. However, the video shows that they were in a 30-mile-an-hour zone. You can see the ‑‑ Sign. The sign. I thought it was 35, but, yeah. It may have increased. No, but it's in that. They were in downtown Nashville, weren't they? Approaching, I think. Yeah. But, yeah. Okay. Between 30 and 35. So getting back to the question of credibility, though, and your question, Your Honor, that the court did not find incredible Cross's testimony that as he passed the car going in the opposite direction, he could discern that the light was out. That's what Cross testified to. He said, as I passed, I saw that the light was out. And the court didn't find that testimony incredible. It also didn't find incredible in his testimony that as he passed his hand under the plate after stopping the car, he found that the light was out. The court said that it was incredible that Cross could have made that 50 feet calculation while traveling in the opposite direction. But Cross never testified that he made that 50 feet calculation. He only testified that he saw that the light was out. So in that sense, the court's credibility finding really was against the manifest way of the evidence in the sense that it was not based on any testimony that was given. But the main point that I want to stress here is that the court's credibility finding was irrelevant because the question of legibility at 50 feet was a question on which the state needed to present no reliable testimony in order to establish a statutory basis for the traffic story. Again, one of the two things that mattered was whether or not there was a light at all. And then if there is a light, then whether that light renders the plate legible at 50 feet. But if there's no light at all, then of course it doesn't. So the court's credibility finding really gets back to the erroneous statutory interpretation that the court made, that all that mattered was whether or not the plate was legible at 50 feet, presumably from ambient lighting. The court observed in its oral ruling that under his opinion, the only way to have a valid stop under this statute would be if you backed up your car 50 feet and turned all the lights off on a dark road out in the country and see if you could read the license plate because that is what matters. And the state's position is that that's not all that matters, that even when the light is off, it's not necessary to conduct that sort of field test and that seeing that the light is off is itself an independent grounds for a stop, regardless of the credibility of any testimony regarding whether a 50-foot calculation was made or was possible. It seems to me that when the statute was drafted, there's almost a presumption that you can't see a license plate for 50 feet if there's absolutely no light illuminating it at night, and that if there is a light illuminating it, it has to be of such power and not obscured by dirt or whatever or low voltage or whatever that you can't visualize it up to 50 feet. I mean, that's my take on the statute. Right. And that it has to be white, that the tail lamps are insufficient, if they're right. Well, it doesn't, does it say that it has to be white? I beg your pardon? Does it say it has to be white? Does it? Yeah, that's my question. Yes, Your Honor, it does. I'm not so sure. Just reading that again. We'll give Mr. Hatch a chance to clarify that. Right. Yeah, it says to illuminate with a white light in the statute. I mean, I do interpret that statute as either a tail lamp or a separate lamp, dot, dot, dot, illuminate with a white light. To me, that means that that light has to be white. That both the tail lamp and the separate lamp, if you use one, has to be white. One of them, yes. But you can't have tail lamps that are white and be traveling down the road. Correct. Okay. Thank you. You're welcome. Morning, Justices. I'd like to begin my argument with stating that I'm going to try to do a specific argument as to the facts and a general argument. And I've been trying to figure out a way to address that. And I don't know if Mighty Python has ever been addressed in this courtroom. But last night while I was preparing, one of their old skits came on. In this particular skit, one of the characters went into an office and said he wanted to have an argument. And they charged him so much for the argument. So he went down the hall and went to one door. And the argument, he went in there and started to talk to the person. And the person started to abuse him. And he got, well, I came here for an argument. Why don't you take the next door down? So he left and went down to the next door. He walked in. And he walked in and said, is this where I come for an argument? And the man, the character said, yes, I've already told you. And he said, no, you didn't. Yes, I did. No, you didn't. So they went back and forth what was going on. And I think it's important in this because, as the court knows, these issues come up all the time. The officer says this. The defendant says this. How do we decide this and how do we avoid why we're here today? The statute says either a tail lamp or a separate lamp. So there has to be a lamp somewhere. However, you don't need a registration plate light. That's not required. It has to be some type of light that focuses on the plate. Do you think it has to be white? Yeah. Well, what's white? Is it the bulb itself or is it if it's covered with some type of cover that makes it off-white a little bit? What does that mean? I would think the interpretation was it's got to be a white light. And render it clearly legible. So you've got to be able to see it. So what we're talking about here is when the officer is going down, he looks in his mirror for a half second. In his side view mirror. I'm sorry. So that's what we're basing this whole stop on, what he sees there. Because when he turns around, his headlights are on the plate. There's no way once he does that that you can tell is there any other light unless you go down and actually look at it. Is there some light? And does it go 50 feet? He says he stopped it because it didn't have a light. This isn't a reasonable articulable suspicion. He's not trying to investigate whether or not it's 50 feet. We're not going by that standard. We're going. It has no light. Therefore, it's a violation. I can go up and do whatever happens after that. The state wants to argue that he goes up and investigates the light after he gets out of his car. He doesn't do that. What's he do? He flashes his flashlight. So he's got his headlights on. He's got a flashlight. And he's some distance away. At that point, he doesn't go down and see if the light works or not or if there is a light. Well, wait. Wasn't that after she said, why did you stop me? There's two times. Okay. First, he gets out of his car. You see him get out of his car. He stops. He walks towards the car and he puts a flashlight. I assume he's doing something with the plate. There's no testimony. But if that's what they're saying, he goes down and checks. He never gets down close to the light. He then goes around and he talks to the driver, goes through some things right away, and then comes back later, back to the car and says, well, I stopped because you didn't have a light. He walks up and you see him put his hand down. You don't see him look down from there. You see him put his hand down saying, your light doesn't work. Again. But I didn't think that the court – I thought the court made it real clear that it didn't make any credibility finding on whether or not there was a light on or off. Am I wrong about that? Well, his credibility, I think – the court made its decision quite honestly right from the start because he says there's no way he could have seen that. I don't believe what he said. There's no way he could have seen that a light was out? Or that it was 50 feet. But then you're saying that it doesn't matter if the light's out. As long as there's some light on. Okay, but what – okay, a car's going down the road. Right. All you see are red taillights, correct? Are you behind the car looking at it? Well, let's say you are behind the car looking at it and it doesn't have a separate license plate illumination. What are you going to see? You're going to see the plate reflect off of his lights. Let's – okay. Just tell me what a normal car looks like without a license plate illumination with its lights on. You will just see red taillights, correct? And you're not illuminating it with your headlights? If you don't – if there's no light back there and there's no other way to get light on, you're going to see the red taillights. And are you saying that that's adequate to illuminate something for 50 feet, a license plate? Absolutely not.  But you'd have to investigate, is what I'm saying. Except that – are you saying that a police officer can't see a car drive by and know that it does not have any other illumination other than its red taillights? That's what the court found. I don't think – I thought the court found that there was no way that he could tell that there was an illumination for 50 feet. You're correct. And so I thought that he almost made it an obligation or a burden on the officer that he had to show or prove that you could not see the license plate for 50 feet. I think that's necessary. Okay, so you're saying that it's an and in the sense that there has to be a showing that even without any illumination by a light, that you can't – that it has – you can't see it for less than 50 feet. Right. I think the officer, if he would have testified, could have said, I can see a light. I'm going to go investigate. I'm going to turn around. I'm going to get behind that car, whatever it is. I'm going to turn my lights off. I'm going to stop, whatever, and I'm going to investigate whether or not there's any – even any lights illuminating. I think he could have done that, but that's not what's – And you're saying he has to do that even when – as the car passed, he testified that he could observe there wasn't any light illuminating the license plate. Yes. Okay. He's got to show because when he gets behind the car, he doesn't know. There's no way for him to know because his headlights were bouncing. I agree with that, but what I'm saying is, is that apparently, and I would understand that this is probably not the first time this happened, that he makes that determination as he's driving by the vehicle. He says, if you think it's credible, that he can look. But the court said he didn't care, and from what I gathered, the court said that that's not how he decided. He almost makes it a burden that the officer has to prove that second part. I think he does. Okay. This is a real question. This is the fourth time this guy said that in a month, different cases. That's probably what's going on. I mean, there's more to this case. We never got very far because of Judge. I mean, right off the date, the judge already made up his mind. Judge was pretextual. Yes, pretextual. He's making stuff, and you can tell by the way he's interrogating her. How are you? Where are you going? How much have you been drinking? I mean, it's right there. Well, you know, it is 1130 at night in Nashville. You know what I'm saying? Well, unfortunately, that's true. Unfortunately, that's true. The problem is it's happening in April, too. Well, that's all right. I mean, there's two young girls in the car. I mean, you can say whatever. Whatever. But the problem is when you look at it, and I don't know if the courts look at it, but you look at the tape. When his headlights aren't on, there's a light. I mean, there is a light on that plate. So we're going to see that. Yes. I sighted all those spots. You can see it. Now, it may be dim, it may be whatever, but we don't have any evidence at all about the distance of that. When you look at those spots, when his body gets in front of the headlights, you're going to see light coming down on that plate, and that plate is consistent with the picture that we submitted that the parents took the next day. But the court obviously didn't make a ruling on that because they said it was irrelevant, and, of course, anybody could go out and add a new headlight the next day. Well, I think it is relevant. I mean, what is somebody supposed to do? Think of this girl. She's 21. She gets pulled over. You know, what's going on? Her taillight's out. Is she going to go down and look at there and say, hey, look, no, you're not. You're the wrong officer. So what does she do? The car gets towed. The mom goes the next day, takes it right out, and it's working. That goes to credibility of I think it's relevant. I disagree with the court on that. How else do you do it? What if it would have been an hour later? Are you saying that doesn't matter? It goes back to the original stop. We stopped it because it was a violation. It doesn't no longer happen with reasonable or typical suspicion that we're not even there. But we're being asked to interpret the statute. Right. Right, and I think the statute says it has to be 50 feet. Now, the big picture, why did I bring that up? Think what's going to happen here. If the officer did say you don't have a lot, what are you supposed to do about it? If you say that you need to measure the 50 feet, well, darn it, measure the 50 feet. And the thing that kills me here is that he took pictures of the alcohol that came out. All he had to do was go up and take his phone and take a picture of that line. And that's where the court's going. That's where the legislature's going with these DUI tapes. We've got the technology. We've got videotaping so you don't have to make these decisions. We don't have to go through all this. Well, it would have been a lot easier, though, if the court had said, I made my decision based on a lack of credibility of the officer. I don't believe that the light was either out or I believe that it was illuminated, and we don't know how illuminated. But the court pretty clearly said I'm not deciding that. And that's where I'm all confused about. I think the problem with how he addressed that is he didn't find it credible from the get-go. From the very beginning, he says, no way. There's no way you did this. It's not possible. You've got his experience, his background as an attorney. He says there's no way that this happened. You're not credible. And so we never get to the other stuff. So I think, based upon what's been presented, there is a light. He was wrong on the problem of cause because you have to know about the 50 feet. Maybe it was a dim light. He says I didn't see the light. Well, could it have been dim? Go investigate it. He had the right to do that, but he didn't even want to do it. He wasn't worried about that for the whole thing. He just wanted to get straight into that car and start investigating it. Investigate it for a possible DUI. So under the statute, I think there's two problems to it. I don't think reasonable or typical suspicion applies to that standard because he's not investigating anything. He's there. There's a violation, and that's why I'm stopped. So it's a probable cause issue. He didn't have probable cause. He should have taken steps to ensure that he couldn't see that 50 feet. And that's the big picture that the officers need to know, the public needs to know, is that you can't just pull somebody over and say you don't have a light because the issue is it doesn't go 50 feet from some source, whatever the source is. If you don't have that source, then you violate the statute. Well, that's what I kept trying to ask you. What could be a source if you don't have any kind of white light? I'll repeat now. Washington County has some people that have old trucks and things that maybe don't have a light that's in that spot, so they hook up something that can light the plate in the back under the statute. The next line, any tail lamp or tail lamps together with any separate lamp or lamps for illuminating a rear registration plate shall be so wired as to be lighted whenever the headlamps or auxiliary driving lamps are lighted. So you can do it. He can go and investigate, well, I didn't see a light. Do you have any other light that's here? Is there some problem with your wires? He didn't do any of that. He never investigated it. He thought from that point, as soon as he looked in the mirror, that it was a violation, and that's not correct. So we'll be able to tell by looking at the rear of the car whether or not there were any extra lamps or anything that illuminated the plate? You'll see the light from, and I don't have the color photo on that record. There's a color photo that shows the light. That same color, when they get in front of those headlights, you're going to see it, the spots that I cited in my brief, at those points. It's just for a split second, so you've got to be ready for it. You can freeze frame that, and you will see a light on that plate. Okay. And I do agree with you. If there's a light on the plate, then I think he does have an obligation to somehow be able to show that it's not lit for 50 feet. But if there's nothing illuminating it, then I have trouble not finding a violation because what could be illuminating it if you don't have any lamps? Thank you. Thank you. Council. A couple brief points. Again, I think the difference is we're talking about an and versus or here. Is one of these, is the satisfaction of one of these prongs enough? And I just want to reemphasize that the white light itself has to be the thing that's illuminating the plate, not animated light from an approaching squad car. I think the petitioner said that even if he can't see the light at all as he's passing, then he can investigate. Then there's reasonable suspicion, and he can investigate that. Well, if there's reasonable suspicion to investigate that, then the traffic stop can be upheld. I think the petitioner is saying that if the officer, in his mind, believes that there's probable cause but there's actually only reasonable suspicion, then the stop's no good. But, of course, it's the objective reasonableness of the stop that's at issue here, and that's a question that's reviewed de novo and under a packet of issues, whether the stop's valid for any reason, including whether there was actually a probable cause. There was a reasonable suspicion. The petitioner said that the officer immediately approached the petitioner and said, How much have you been drinking? This goes to the question that's been raised of a pretext stop, or your Honor said whether that was the fourth one made that week. The record shows that upon approaching the petitioner, the officer noted the odor of alcohol and saw bloodshot eyes. And so at that point, that was the question, How much have you been drinking? So I don't know that it's particularly probative that that was the first question that was asked, was How much have you been drinking? The petitioner suggested there's a light on the license plates in the video. Again, the circuit court said, Not really. And notably, the petitioner did not herself know whether the light was on at the time of the traffic stop. And then the petitioner said that the court made a credibility finding about the officer's testimony. Again, that credibility finding was only as to the officer's ability to conduct this mathematical calculation of legibility of 50 feet. But again, that's a testimony that the officer never gave, and the court never made any other credibility finding. And the court's credibility finding, again, ties directly back to the court's statutory interpretation that it didn't matter whether or not the light was on, unless there are questions. Thank you, counsel.